Good morning, Your Honors, and may it please the Court, I am Joseph Brooks from the FDIC's Appellate Litigation Unit. If the Court allows, I would like to preserve four minutes of my time for rebuttal. The Clerk, please turn up the sound a little. I'll try to speak up as well. Your Honors, in order to put things in focus, I'd like to spend just a minute identifying which issues are in our case and why any of those issues are important. This case, another RMBS case, involves five issues. Three of the issues were involved in the earlier cases. What's important to note about these five issues is one of them was not reached by the District Court below, and as to the other four issues, the only way this Court can affirm the District Court as to each issue would be to create a circuit split as to each issue. I'm not going to be repetitive, but I do want to mention, on the extender statute issue, as you know, the 2nd, 5th, and 10th circuits have all ruled that statutes of repose are displaced, and so we'd be creating a deep circuit split in order to affirm the District Court noted only that she agreed that it is legal tolling, but otherwise did not address the issue. On what's been called the American Pipe standing issue, of course the 2nd Circuit NECA IBEW case, as the District Court acknowledged, would require a different outcome here. On the American Pipe state court class action issue, which is the first new issue in our case, it's not in the other cases, this Court would have to create a circuit split with Judge Easterbrook's Sawyer decision for the 7th Circuit, and on the discovery rule statute of limitations issue, this Court would have to create a circuit split with the operating engineers case out of the 3rd Circuit. Now how do all of these issues fit here? Your Honors, if you were to say, if you were to rule that the extender statute does displace statutes of repose, that would cover certificates in this case that had a purchase price of approximately $763 million, but it would not cover anything. The Court would still need to reach the American Pipe issues with respect to the non-federal claims, excuse me, with respect to the federal claims only of guarantee, and also with respect to claims of colonial and strategic. Now those colonial and strategic claims alone, which again can only be resolved by addressing American Pipe, have certificates with a face value purchase of over $145 million. On the other hand, if American Pipe applies, if the Court rules that American Pipe applies to both the statutes of repose and the statutes of limitations, that takes care of all of our issues. The Court does not need to reach anything else. And finally, if the Court rules that the extender statute displaces statutes of repose and it should rule, which we don't believe it should, that American Pipe does not apply, only then, only then would the Court need to reach the discovery rule issue. But in that event, those would still be claims for which the certificates have a face value of $61.7 million. I'd like to focus on the issues that are in this case and not in the other cases you've heard about this morning and make a few minor points on some of the issues that are. I will not be addressing the extender statute issue at all except to say that this Court should follow the decisions of the Second, Fifth, and Tenth Circuits and hold that the plain meaning, meaning of that statute, is that it creates exclusive time periods for any action brought by the FDIC regardless of any other applicable time period. On American Pipe, briefly on the American Pipe standing issue, we agree, of course, with the NCUA that the Court should not consider this a standing issue at all and certainly shouldn't consider this as an issue that can subsequently block an application of American Pipe when you clearly had a class action that was filed. The reason is, is that a class standing issue would have the same impact, if requiring a putative class plaintiff to predict the outcome, as class certification would. You would essentially obliterate the American Pipe rule by telling putative class plaintiffs that you must either predict accurately how you think a court may resolve this issue or else you have to file a suit. Of course they would file suits. But even if this Court still thought that it needed to be reached because it is a standing issue, we don't believe it is a standing issue. In our brief, we argued and pointed out that the Supreme Court in the Gratz v. Bollinger case acknowledged that there is confusion. There is no settled rule as to whether the ability of a named plaintiff to represent claims of putative class plaintiffs, whether their claims are sufficiently similar. There is no consensus on whether that is an issue of standing or merely an issue of typicality under Rule 23a. And as we further argued, we believe that the better view is that it is simply an issue of typicality. It certainly tracks the language of 23a. The most significant thing about this issue for this Court, I believe, is that my opponents did not respond to that argument at all. They simply assumed it is a standing issue. So in the first instance, we would suggest to the Court that you should rule that this issue of the relative variation of the named plaintiffs' claims and the putative class plaintiffs' claims is not a that would be considered in deciding class certification, and therefore it obviously cannot bar application of American Pipe. Further, just going one level deeper, and then I'll get out of standing, even if this Court were to determine that the issue is a quote-unquote standing issue, we then would be confronted with the only circuit-level authority on this issue, which is in the same context as this case, an RMBS claim, the Second Circuit said, look, the issue in a case like this, and the issue of standing is not an issue of injury, it's an issue of whether or not the named plaintiff has a sufficient stake in litigating the claims of the putative class plaintiffs. And what the NECA-IBEW Court quite reasonably said was, in the RMBS context, exactly what's in front of this Court, the critical issue is whether the loans which underlie the certificates, the loans on which the certificates are based, whether they were originated by common originators, and in that case there were a group of common originators. This is an even stronger case, because here, the class action we're relying upon, the Luther class action, all of the RMBS certificates had underlying loans that were originated by countrywide. And in our case, the same is true, it's virtually 98% true, I believe, there's a very small number, 98% or thereabouts of the loans that underlie the certificates are also countrywide. So even if this were a standing issue, and even if it were appropriate to consider it, subsequently in determining whether a putative class plaintiff could take advantage of American pipe, this Court would even at that point have to create a circuit split in order to rule in order to affirm the district court, and we don't believe it should do so. A second American pipe issue is what's been called the state law class action issue, state court class action issue. In this case, the class action that the FDIC is relying upon, that the banks would have relied upon to toll the statute of limitations, even though it was a 1933 Act case, was initially filed in state court in California. Because the state courts have concurrent jurisdiction. The issue is whether this follow-on putative class plaintiff's action brought in federal court is subject to American pipe tolling. In the Sawyer case, Judge Easterbrook in a very well-reasoned decision said that, quote, the source of law and not the identity of the forum determines the effect of a failed class action, unquote. Therefore, he said, in that case it involved a federal statute that, like the Securities Act, it was the, I believe it was the Telephone Consumer Protection Act, not only did it create a federal cause of action, but it provided its own statute of limitations. Same thing here. Federal Securities Act, concurrent jurisdiction in state court, but federal statute of limitations. Let me just clarify this. Sure. How are the purposes of Federal Rule of Civil Procedure 23 furthered by allowing American pipe to apply to California class actions? Well, there's two points to make on that, Your Honor. The first one is they're furthered because, as is common federal law, putative class members are just as likely, perhaps even more likely, to file individual claims if there'll be no tolling in federal court. But more importantly, American pipe is not based strictly on Rule 23. As Your Honor pointed out earlier, the court must determine whether or not tolling is consonant with the legislative purpose. And in Sawyer, Judge Easterbrook relied on the Supreme Court's decision in Chardon, C-H-A-R-D-O-N, which is also discussed in opponents' briefs. And what Chardon held was that the tolling rules for a statute of limitation are intricately tied to the statute of limitations. And therefore, in that case, which involved a Section 1983 class action, but at that time Section 1983 incorporated state law statutes of limitations, the Supreme Court held that even though all of the litigation took place in federal court, even though it was a federal claim, because a state statute of limitations governed, you could not use the federal tolling rule of American pipe. But instead, you had to look, in that instance, to Puerto Rican law to see whether Puerto Rico would use an American pipe tolling type law. In other words, because the tolling rule is a part of the statute of limitations, it's tied to the statute of limitations, it is, as Judge Easterbrook said, not the forum that controls, but the location of the substantive law. And this court reached a similar decision in the Albano case. In the Albano case, this court said that where you had an Arizona state court class action and a subsequent putative class member's action in district court, the issue of whether there would be American type tolling had to be decided not by Rule 23 because you're in federal court, but by whatever Arizona would do with its tolling rule. So American pipe tolling is, as the Supreme Court said, an attempt to accommodate Rule 23, but it's also based on being consonant with the legislative purpose of the relevant statute, which provides the statute of limitations. So under Judge Sawyer's decision, which is grounded on the Luther class action, because it is a federal claim, a federal statute of limitations, notwithstanding the fact that it was filed in state court initially, it has American pipe tolling effect in a subsequent individual action in federal court. Again, the only circuit level authority on that case is by the Seventh Circuit. I would note that in the district courts, there's at best a split, and the district court in our case here noted that the district courts, there was no uniformity on that issue. So again, in order to avoid a circuit split, we would urge the court to follow Judge Easterbrook's well-reasoned decision in Sawyer. I would make a really quick point, I hope, on the issue. Your Honor, this court really only needs to look at three cases to decide that issue. American pipe itself, the Supreme Court's subsequent decision in Greyhound, and this court's decision in Dungan. In American pipe, the court applied the statute of limitations from the Clayton Act, but just like the Securities Act, Section 13 statute of limitations here, it has kind of a two-part formulation. There is a four-year, what we commonly refer to as statute of limitations these days, that runs four years from the date of accrual, but there's a second provision that suspends any private antitrust action during such time as a federal civil or criminal action is pending. But then it provides critically that the plaintiff would have one year from the time that the federal action ends within which to bring any private action. That is classically a reposed statute that sets a period of time to bring a case that is untied to the accrual of the action. And it is that part of the Clayton Act statute of limitations, Section 5B, to which the Supreme Court applied American pipe tolling in American pipe. In other words, it was a statute of repose. And you don't have to take my word for that, because subsequently in the Greyhound case, the Supreme Court quoted this court's decision in Dungan and stated as follows, quote, a Ninth Circuit panel very recently emphasized, quote, although the plaintiff is correct in asserting that Section 5B, the repose part I just talked about, serves the broad and beneficent purpose of aiding private antitrust litigants, it is also true that it is a statute of repose, unquote. Supreme Court quoted that with approval, and that was not just loose language in Dungan, Your Honors, because Dungan discusses at length Section 5B's, quote, statute of repose purpose. And so I would urge the court that American pipe itself applied American pipe tolling to a statute of repose. And as Judge Wynn pointed out earlier, American pipe itself rejected the argument that that violated the Rules Enabling Act. And I should resolve that issue. I would make a couple of quick points on the discovery issue in the event that the court needs to reach that. Again, I would emphasize the court need not reach the discovery rule issue in this case if it rules in our favor on American pipe. The district court said, quote, a complaint with general allegations that Countrywide was deviating from its underwriting standards, excuse me, would have been sufficient to survive a dismiss, unquote. That statement of the law is directly contrary to prevailing authority. In the Third Circuit operating engineer's case, the court said as follows, quote, the statute of limitations would not have begun to run until the plaintiff discovered the untrue statements or the omissions concerning her particular certificates. So as the Third Circuit recognized, it is not enough to trigger the statute of limitations under Section 13 that you are aware of generalized allegations about an originator's practices. You must have information sufficient to allow you to plead, consistent with your obligations, that there is a connection between the originator's actions on the one hand and your particular certificates. Other courts have agreed. For example, the FIFA versus UBS Americas case, which was subsequently affirmed by the Second Circuit. The court said you must have, quote, facts that connect the originator's general practices to particular securities, unquote. In another case, the police and fire retirement system case, the Southern District of New York dismissed an action where the plaintiff, quote, failed to allege that any of the misrepresentations specified in the complaint applied to the particular mortgages underlying the certificates it purchased, unquote. These courts, the Southern District of New York, are the courts that our opponents have described as the courts who are most familiar with securities law. Operating engineers, Third Circuit decision that you would have to create a split with, and the Southern District of New York cases stand for a very simple proposition. It is not enough to simply allege bad practices by originators. You must be able to connect those to your own certificates. And the District Court never decided that we failed to do that. The District Court simply applied the erroneous rule about generalized allegations. Unless the court has any further questions? No, thank you, counsel. Thank you very much. I please the court. Mark Perry for the underwriter defendants in these appeals. Your Honor, I'd like to make three brief points on the extender statute that have not extended statute. Mr. Frederick said, in essence, to provide a comprehensive and mandatory and uniform one-size-fits-all federal statute time period. There's no citation for that. There's no case that says that. There's no legislative history. That's not what the statute says. We actually know what the purpose of this statute is, but the agencies have never mentioned it. It's in the case that's cited on page one of the FDIC's reply brief. It's called SMS. It's from the Fifth Circuit. And here's what the SMS court said. I'm going to quote. Before the enactment of FIREA, a split in the circuits developed concerning when a cause of action accrued for cases brought by the receiver. Footnote 19 says, some courts said that it accrued based on the underlying state law, and other courts said it was upon the appointment of the receiver. Picking up again with the quote, Congress resolved this split of authority by providing in FIREA that a cause of action accrues either when the FDIC acquires the claim by assignment or receivership, or when the cause of action accrues under state law, whichever is later, see, and it cites the extender statute. That is the reason for this statute. It was to resolve a split in authority over accrual, and that's why the statute itself uses the term accrual five times. It is entirely an accrual statute. It is when the agency's claims accrue. And as the Supreme Court made clear in CTS, the entire concept of accrual is antithetical to that of statutes of repose. Reposes do not have accruals. Accrual is the opposite of a repose. So the entire purpose of this statute was something other than the agencies have now said. And let me make one more point on this. Before FIREA was enacted, August 9, 1989 was the effective date of FIREA, not a single federally insured institution had brought a 33-act claim as a plaintiff. Congress wasn't thinking of these. No claim by a receiver had ever been barred by a statute of repose. Congress wasn't thinking about this issue. Congress was thinking about the accrual of fraud, indemnity bond, and contract claims that it did bring, that the receivers did bring against the Charles Keatings and other executives of the Savings and Loans. Okay, so that's what this statute was meant to do. It had nothing to do here. So fast forward to 2015. And now we have the agencies, often represented by fancy private counsel, seeking lawsuits involving hundreds of billions of dollars in face amount of securities, not from the issuers, the issuers not in this injury. These are strict liability claims, not for the FISC, Mr. Frederick misspoke there, but for the insurance fund after the Supreme Court has already told us in the O'Melveny case, the case my friends hate to cite because they lost that case, when they convinced this court the last time around after FIREA to do exactly what they're asking you to do now, the Supreme Court said no, that's wrong, that more money to the fund is not the wins. Congress could have enacted a statute that says the FDIC's claims run in perpetuity. Congress didn't do either of those things, which brings me to my second point. What did Congress do with respect to these claims? The other thing that has been shockingly missing from the agency's This is a preemption problem. They are asserting that this federal law supplants the Texas law, under which the legislature of Texas made the very careful policy determination that it was necessary to counterbalance this new strict liability statute with a short proposed period. We're not guessing about this either. I take it you're saying we shouldn't follow the 7th Circuit? The 10th Circuit or the 5th Circuit, Your Honor. Or the 7th Circuit's decision in Sawyer, Atlas, Heating, and Sheet Metal Works. That's actually a different point, Your Honor, and I'd be happy to address that now. As to American Pipe tolling based on state claims, first, the Supreme Court in American as the Supreme Court made clear in Smith v. Bayer. Therefore, there is no doctrinal basis to apply it to state court, and the 7th Circuit was simply erroneous. However, let's spot the agency's benefit of the doubt and say that Sawyer was correctly decided in the context of that claim, which was a TCPA claim, Telephone Consumer Protection Act. Do the states have similar Rule 23 type considerations? Sure, of course they do, Your Honor, and so let's assume that some class actions could be tolling. The one thing that Mr. Brooks said today that I agree with is the tolling effect of a limitations provision has to be defined within the context of that provision. And Judge Nguyen, this picks up on one of your earlier questions, which is the very important, in fact, I would say the critical language in American Pipe that says consonant with the statutory scheme. Which statutory scheme must it be consonant with? Well, it's the statutory scheme under which the suit is brought. This is why the statute of limitations, the American Pipe issue, by the way, dovetails with the extender statute. Section 13 of the 33 Act does not look anything like the statute of limitations in the TCPA, which is involved in Sawyer. The TCPA has a plain vanilla accrual statute. Plain vanilla accrual statutes are subject to tolling. That's what makes them plain vanilla accrual statutes. Section 13 has a specialized, hypersensitive statute of repose. It says in no event, in no event may a claim be brought after three years. Yet the FDIC is here positing that there is such an event and it would find it somewhere in the interstices of this extender statute. The reason that consonance is required is that if the underlying statute, the cause of action on which suit is brought, extinguishes the claim, then no tolling can be applied. That's what the Supreme Court held in Lampf. That is a holding. That's not dictum. And the Supreme Court has applied that over and over again. In Irwin and other cases that the agencies don't address because tolling only applies if Congress has left work for the courts to do. And when Congress says in no event shall a claim be brought after three years, there is no work for the courts to do. Or, more dramatically, under the state law claim, the Texas Supreme Court has told us, quote, this is the Methodist health care case, your honors, that's cited in the business round tables brief at page 8. Statutes of repose create, quote, a final deadline that is not subject to any exceptions. The whole point of layering a statute of repose over a statute of limitations is to fix an outer limit beyond which no action can be maintained. The Texas Supreme Court went on in that case to explain that statutes of repose kick in only in cases like these where the statute of limitations has, for some reason, been extended or deferred or suspended. Otherwise, you don't need the statute of repose. Well, don't California courts extend American Pipe to California class actions, the case of Jolly versus Lilly? Why shouldn't we? Your honor, again, American Pipe comes from Rule 23, and while California courts apply a variation of Rule 23, it is not Rule 23. More importantly, however, any American Pipe tolling, whether the first action is filed in state or federal court, is absolutely inconsonant with the substantive causes of action on which the FDIC is suing. Whereas here, the FDIC brings suit, or the initial class action involves, to be more accurate, a claim under a statute that has a repose provision, the action can be told as to the limitations, but only up to the repose provision. And that was the clear holding of the Second Circuit in the IndyMac case. I mean, we've talked a lot about circuit conflicts today. Let's be clear. To affirm, this court has to create a circuit conflict with the Fifth and Tenth Circuits. To reverse and do what the FDIC is asking, you would have to create a circuit conflict with the Second, the First, and the Third Circuits. So either way, there is a circuit conflict. I suspect either way, these cases are going to the Supreme Court, and the question is whether you would rather be attacked or defended in your decision. The other point on those circuit conflicts is, every one that we are urging, we have the Supreme Court already having weighed in on the point. On the extender statute, we have CTS, we have Lamp, we have O'Melveny, we have a series of Supreme Court cases, they've got the Tenth Circuit. On IndyMac, we have American Pipe and Crown Cork. Chardon, which I actually agreed with his description of Chardon. Chardon says you have to use the tolling aspect of the statute itself, and we know that Section 13 is not amenable to tolling because of Lamp. Your Honor, if I could tie that to the third point, because I think it's related that I'd like to make about the extender statute. We have an interesting disagreement among the agencies. Mr. Brooks stood up and said it's plain and unambiguous. That's why he doesn't want to talk about the presumption against preemption and the doctrine against applied repeal and so forth. Mr. Frederick, to his credit, stood up and said it is ambiguous, it is subject to two meanings, but the better meaning is there, is the agencies. In fact, Mr. Frederick urged you to apply, quote, a presumption ought to be the broad meaning. In other words, they need a presumption to win their case because this litigation demonstrates one thing, that the statute can be read two ways. We think, you know, the judges have debated this point. The count right now is 11 to 9. Eleven judges have sided with the agencies. Nine have sided with the underwriters. If a statute can be read two ways, then we have to invoke the traditional tools and decide how to decide between those two ways.  Mr. Frederick, the only person that's mentioned a presumption today is Mr. Frederick who said there should be a presumption in favor of a broad reading, by which he means the reading that includes statute of repose. Let's run through the presumptions that the Supreme Court has told us to apply. I'd like to start, Your Honor, with CTS. CTS said in the 1980s the term statute of limitations had two meanings, inclusive and exclusive. But it didn't stop there. It also said that the primary meaning was that that excluded statute of repose. The primary meaning. And the secondary meaning is the inclusive one. So just right off the bat, the agencies are asking this court to adopt the secondary meaning when the presumption I would submit ought to be in favor of the primary meaning. But that's not the only one. In the particular area of limitations provisions, the Supreme Court has told us all to apply a presumption against perpetual litigation. That's the Gabelli case. The Gabelli case says where Congress has spoken of limitations provision, the courts will construe it narrowly, including against the government. And I would reiterate, this is not the government. This is a private entity. And the Supreme Court said that in so many words in O'Melveny. It says, the FDIC is not the United States. That's a direct quote from O'Melveny. Second, it's not just that. It's not just that limitations provisions are generally construed tightly. In the Simmons case, Credit Suisse v. Simmons, the Supreme Court expressly looked at strict liability statutes under the securities laws and said that there's a clear statement requirement for extending the limitations provisions applicable to strict liability claims. And this is a strict liability claim. So we have another Supreme Court case that tells us where to put the thumb on the scale. And we can go on from there. There's a construction against the FDIC as a receiver. The O'Melveny case says not only is the FDIC not the government, but the FDIC takes the substantive law as it finds it unless it is expressly modified by FIREA. Mr. Frederick gave you a rather dramatic reading of O'Melveny. Look at that page. It doesn't say anything like he said. What it actually says is see the extender statute extending state statutes of limitations. We agree that the extender statute extends state statutes of limitations. It doesn't say anything about federal and state statutes of repose, however, and therefore the agencies take substantive law as they find them. The court has also given us another presumption that in business context we should hesitate to interfere with settled expectations. That's the Landgraf case and the Benzene case and many others. Here we have businesses, underwriters. The policy of the 33 Act is after three years the underwriters can commit their capital to new underwritings rather than keep it in reserve for liability. There's no dispute about that. The Texas Securities Law, the policy of the statute is after five years the investor shouldn't be able to play the market with the underwriter's money. It shouldn't be able to wait to see which way the bet is going to come out. You can't bet after the horse race has run. Those substantive policies would be unsettled by the agency's determination. That gives a presumption to the other direction. There are, of course, presumptions against the modification of substantive law. One here, the presumption against preemption. As to the Texas statute, I actually didn't understand Mr. Frederick's argument about displacement, but certainly as to the Texas statute, there is no doubt that the agencies are asking this court to rule as a matter of federal law that the extender statute preempts the Texas legislature's determination that in no case can a TSA claim be brought after five years. This court has to make a holding on preemption. And to make a holding on preemption, it has to apply the presumption against preemption. This court has applied that presumption many times. We have to look at the policy of the state law and determine whether Congress made the considered determination and a clear and manifest statement to override it. There is no such here. And as to federal law, section 13, the doctrine against implied repeals, I take it Mr. Frederick's answer was, well, this only applies to the agencies, so it's not really an implied repeal. What does that mean? It only applies to three or four agencies in the United States seeking in these cases, the RMBS cases, hundreds of billions of dollars in recoveries based on the face amount of the securities. There's no exception. There's no de minimis exception to the doctrine against implied repeal. And even if there were, this case is de maximis, Your Honor, not de minimis. You've heard nothing about these presumptions. You've heard nothing about what Congress actually intended. You've heard nothing about how to read statutes the way the Supreme Court tells us to. What you heard was the government should win because it's the government. I said it's not the government. You've also heard Congress did something extraordinary. Congress did do something extraordinary. It did extend the statute of limitations. But giving that reading its plain meaning, that is to limit it to statute of limitations, makes it work together with Section 13 and the Texas Securities Act. It harmonizes the provisions. And this court's job ultimately is to harmonize the provisions of federal and state law where possible. Where Congress did not clearly intend disruption, this court should not create disruption. And so on the extender statute, the harmonization position is to limit it, as its text says, to a cruel base statute of limitations, plain vanilla statute of limitations. Now, quickly on American Pipe, statutes of repose can't be told. LAMP says that. INDIMAC says that. We have the Supreme Court. That should trump. We have the Second Circuit applying it on the context of this very statute. The FDIC wants you to go into a square conflict on that. The Supreme Court already granted cert in INDIMAC. It dismissed for reasons they didn't tell us, I suspect because of the jurisdictional defect in that case. But if you want a ticket to the Supreme Court, go ahead, you know, disagree with INDIMAC and there's a quick way up there. Otherwise, if you follow INDIMAC, as makes sense, it makes no difference whether it's legal or equitable tolling. LAMP says statutes of repose can't be told. CTS says statutes of repose can't be told. The Texas Supreme Court says statutes of repose can't be told. Who cares what kind of tolling it is? The whole point of a statute of repose is it's a statute of repose. It's not subject to judicial tinkering or adjustment. Even if the doctrine were relevant, whereas here the case comes out of state court, the supposedly tolling case, Luther, it must be equitable tolling because there's no statute on which the, no federal statute on which the tolling could be based. It is equitable, Judge Nelson, in a different way than the diligence of the plaintiff kind of equitable. But my friend makes a point about reliance and I think this is an important one. He says how are people going to know, excuse me, transitioning to the standing point and why NECA IBEW is so wrong and the First Circuit in Nomura, the Second Circuit is not the only appellate decision on this. The First Circuit got there first and the First Circuit got it right in the Nomura case and that's the case the court should follow in standing. What about the absent class members? How do they know what's in that First Class Act? How do they know if their rights are being protected or if they have to file their own suit? In some cases, I'll give you, it could be a hard question. In securities cases, in federal court, it's not a hard question. Well, these are all sophisticated parties. If 10 complaints are filed against Countrywide and various news articles did not place Guarantee Bank and Strategic Capital Bank on notice of their claims, what would have given them a proper notice in your opinion? Well, I think the news articles and the Luther complaint did put them on notice of the problems in the Countrywide underwriting inquiry notice such that a reasonably diligent plaintiff would have filed suit on the statute of limitations discovery point within a year. And that's why those claims are time barred. I'm mystified by Mr. Brooks' suggestion that the Operating Engineers case from the Third Circuit goes their way. It squarely supports us. It says the Luther amended complaint put the plaintiffs there on inquiry notice and they had two months to file a complaint because they could have done that and the FDIC could have done that within two months here too. The only thing that's different in the Operating Engineers case is there was a statement by UBS, a market reassuring statement between the original Luther complaint and the amended Luther complaint and so the court said you have to move the date back to the amended complaint. There was no reassuring statement by any of these underwriters in this case. So we use the very reasoning of the Operating Engineers case involving these facts essentially shows why those two claims were time barred. And as to standing, I apologize, Your Honor, may I finish this point? Yes, please. Thank you, Judge Reinhart. As to standing, these are sophisticated parties. These are banks purchasing billions of dollars. The Guarantee Bank, one of the four plaintiffs in this case, held $4 or $5 billion worth of mortgage-backed securities. They are monitoring their portfolios. They are monitoring what goes on in the world. And in federal court, when a securities complaint is filed under the 33 Act or the 34 Act, it has to contain a certification as to which securities the named plaintiffs held, purchased and sold. The right rule on standing, the statutory standing answer, the one that Congress gave us, Congress writes the laws after all, it says that a plaintiff can bring suit under Section 11 or Section 12 based on such security, that is the security that the plaintiff itself held. And you have to certify that under the PSLRA. And the tolling effect of a securities class action is tied to the certification because the only security that you have statutory standing to sue on is the security that you yourself purchased or sold. That answers every one of these questions. Grass becomes irrelevant. NECA becomes irrelevant. If you hold to the statute with the words that Congress actually gave us, it answers all the questions. The FDIC has one answer to that. It's in a footnote in their reply brief. They say Judge Felser didn't talk about statutory standing. That's false, Your Honor. She did. It's in the Main State 2 opinion and the Main State 1 opinion for that matter. She very carefully went through this entire point. If you limit it to the statute, the case is over. All of these points, in fact, come back to the statute. How do we look at what's going on here? We look at... Thank you, Your Honor. I appreciate the indulgence. Thank you. Quickly, Your Honor, a number of points. I appreciate the concession for operating engineers that the Third Circuit was correct that the time when inquiry notice started was when the amended complaint was filed in Luther. That was September of 2008. That was less than one year before any of the receiverships in this case. With respect to the issue of purpose, we address it on page 1 of our reply brief. We quote the legislative history that says the purpose of the firea extender statute is to hold wrongdoers accountable and to allow the government to recover the most amount possible. We own up to the purpose and that's it. With respect to the point about state claims show how wrong we are, I disagree with that, but it doesn't matter. If this court rules in our favor on American Pipe, we recover every cent that we are seeking under the federal claims. On the in no event language supposedly shows why Section 13 is incompatible with statutes of repose, the earlier part of the statute which says no action shall be maintained is no less draconian in language and nobody would suggest that the one-year period under the securities law is not told by American Pipe. So that just proves too much. On the point about LAMP foreclosing all manner of tolling, LAMP clearly applies only to equitable tolling. It has no application to legal tolling. So that case is simply irrelevant here. On the purported creation of a circuit split, if you rule in our favor on the issue addressed by INDIMAC, the Tenth Circuit and INDIMAC did not rule the same way. The Tenth Circuit and INDIMAC created a circuit split, as you noted earlier, Judge Winn. We believe the analysis of the Tenth Circuit in the Joseph case, that this is legal tolling and that it is not running afoul of the Rules Enabling Act, is the correct ruling for the reasons I addressed earlier. It's consistent with American Pipe itself. On this point about presumptions, Your Honor, it's not me who says that the statute, the extender statute, is unambiguous. It's the District Court, Excerpts, Volume 1, Tab 5 at 4. It's underwriters themselves, brief at 13 through 14. It's the Second Circuit in UBS Americas, 712 F3rd at 141 to 42. It's the Nomura case, the Tenth Circuit, 764 F3rd at 1217. And it's RBS Securities, the Fifth Circuit, and that's 798 F3rd at 264 to 65. Why is that important? Because as this Court held in Association of Civil Technicians, cited in our brief, if the statute's unambiguous, the doctrine of implied repeal doesn't apply. And as the Second Circuit held in New York State Restaurant Association, also in our brief, if the statute's unambiguous, the presumption against preemption doesn't apply. The presumption against preemption also doesn't apply because, as we pointed out in our brief, the CTS Court rejected that in favor of, a plurality of the justices did, in favor of ordinary contract principles. Unless the Court has any further questions. Thank you, counsel. The case just argued will be submitted. Thank you both very much. We appreciate the argument.
judges: D.W. Nelson, Reinhardt, Nguyen